IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

PETER HATZIOANNIDES
                        Plaintiff,

                                                    **CIVIL ACTION No. 17-CV-3969**
                                                    **Judge:** _____
                                                    **Magistrate Judge:** _____

            v.

DEAN MUSTAPHALLI
MUSTAPHALLI CAPITAL PARTNERS FUND, L.P.
MUSTAPHALLI GROUP, LLC
MUSTAPHALLI ADVISORY GROUP, LLC
MUSTAPHALLI CAPITAL MANAGEMENT, LLC

                        Defendants.
----------------------------------------------------------------X

## COMPLAINT

### Preliminary Statement

1. Plaintiff Peter Hatzioannides by his attorneys, Elizabeth Goldman, Esq. and the Cardozo Law School Legal Clinics, brings this action against Defendants Dean Mustaphalli, Mustaphalli Capital Partners Fund, L.P., Mustaphalli Group, LLC, Mustaphalli Advisory Group, LLC, and Mustaphalli Capital Management, LLC  alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10(b)-5 promulgated thereunder and violation of Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act"), breach of fiduciary duty and breach of contract. Mr. Hatzioannides seeks $98,000 in damages plus interest.

1

## Parties

2. At the time of the events at issue and currently, Plaintiff Peter Hatzioannides ("Mr. Hatzioannides" or "Plaintiff") was a resident of Jamaica, Queens, New York.

3. At the time of the events at issue, Mr. Hatzioannides worked odd jobs earning minimum wage or was otherwise unemployed.

4. Mr. Hatzioannides is currently unemployed.

5. Mr. Hatzioannides highest level of education is a high school equivalent degree.

6. Upon information and belief, Defendant Dean Mustaphalli ("Mustaphalli") is a resident of Suffolk County, New York.

7. At the time of the events alleged herein, Defendant Mustaphalli represented to Mr. Hatzioannides that he was a licensed financial advisor in the State of New York.

8. Upon information and belief, Defendant Mustaphalli Capital Partners Fund, L.P. ("MCP") is a limited partnership formed by Defendant Mustaphalli under the laws of Delaware on December 30, 2010.

9. Upon information and belief, Defendant Mustaphalli Group, LLC ("MG") is a limited liability company formed by Defendant Mustaphalli under the laws of Delaware on December 30, 2010. The Mustaphalli Group is the General Partner of MCP.

10. Upon information and belief, Defendant Mustaphalli Advisory Group, LLC ("MAG") is a limited liability company formed by Defendant Mustaphalli on December 11, 2009 under the laws of the State of New York.

11. Upon information and belief, MAG was first registered as an investment advisor in the State of New York in 2010, and was the Investment Manager for the MCP from February 2011 through July 2013.

12. Upon information and belief, Defendant Mustaphalli Capital Management, LLC ("MCM") is a limited liability company formed by Defendant Mustaphalli on January 31, 2013 under the laws of the State of New York.

13. Upon information and belief, MCM replaced MAG as the Investment Manager for MCP sometime after it was formed. MCM has never been registered as an investment adviser with the State of New York.

14. At the time of the events alleged herein, Mustaphalli operated and managed MCM, MAG, MG and MCP (collectively, the "Mustaphalli Entities") out of his office located at 108-18 Queens Boulevard, 6th Floor, Suite 5, Forest Hills, New York 11375.

15. Upon information and belief, Defendant Mustaphalli is the sole member of, and has, and at the time of the events in question had full control over all of the Mustaphalli Entities, which include an investment fund (MCP), an entity purportedly acting as general partner to the investment fund (MG), and two investment advisory firms (MCM and MAG).

16. Upon information and belief, Defendant Interactive Brokers, LLC ("Interactive Brokers") is a Connecticut limited liability company with its principal place of business at One Pickwick Plaza, Greenwich, CT 06830. Interactive Brokers clears securities trades for investment firms trading on behalf of the investment firms' clients.

## Jurisdiction and Venue

17. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act of 1934 [15 U.S.C. § 78aa] as Defendant Mustaphalli, individually and through the Mustaphalli Entities, fraudulently induced Plaintiff to invest with Mustaphalli, and with the various Mustaphalli Entities either as the then current, successor or predecessor(s) in interest.

18. This Court has supplemental jurisdiction over the New York state law claims against Defendant Mustaphalli and the Mustaphalli Entities pursuant to 28 U.S.C. § 1367(a) as the claims are "part of the same case or controversy."

19. The claims asserted herein arise under Section 10(b) of the Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. 240.10b-5], Section 12(a)(1) of the Securities Act [15 U.S.C. § 77l(a)(1)], and New York state law.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Defendant Mustaphalli's misrepresentations and omissions to Plaintiff and the orchestration and actual transfer of Plaintiff's securities and monies to Defendant Mustaphalli all were made in Queens County, New York.

21. Defendant Mustaphalli, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the transaction, acts, practices, and courses of business alleged herein by soliciting Plaintiff to make investments in various securities in Queens County, New York.

## Factual Background

22. Prior to 2008, Mr. Hatzioannides had no financial investment accounts.

4

23. In or around 2008, Mr. Hatzioannides' father had a Certificate of Deposit ("CD") account at Citibank.

24. The CD account matured with an account balance of approximately $150,000.00.

25. In or around 2008, Mr. Hatzioannides' father transferred the funds from the CD account to Mr. Hatzioannides.

26. Mr. Hatzioannides used a portion of the funds to pay his bills, and re-deposited approximately $140,000.00 in a money market account at Citibank ("Money Market Account").

27. In or around 2010, Defendant Mustaphalli contacted Mr. Hatzioannides by telephone regarding his Money Market Account at Citibank, and represented himself to be a former financial advisor for Citigroup Global Markets, Inc. ("Citigroup").

28. Upon information and belief, Defendant Mustaphalli's employment at Citigroup ended in or around December 2009.

29. Upon information and belief, at the time of his departure from Citigroup, Defendant Mustaphalli was the subject of an internal investigation into various customer complaints against him at Citigroup.

30. Defendant Mustaphalli had more than 10 customer complaints against him while at Citigroup.

31. Defendant Mustaphalli omitted to tell Mr. Hatzioannides that he had customer complaints against him as a broker.

32. Defendant Mustaphalli represented to Mr. Hatzioannides that the financial advisors at Citibank were not managing his Money Market Account well, and recommended that Mr.

Hatzioannides transfer the funds in his account to Sterne, Agee & Leach, Inc. ("Sterne Agee"), with Defendant Mustaphalli as his financial advisor.

33. Defendant Mustaphalli assured Mr. Hatzioannides that his money would be safe with Defendant Mustaphalli as his financial advisor because it would only be invested in fixed income.

34. Defendant Mustaphalli further represented to Mr. Hatzioannides that he could make Mr. Hatzioannides 10% annually on his investment.

35. On or about January 2010, Mr. Hatzioannides opened an account with Sterne Agee ("Sterne account") with Mr. Mustaphalli as his financial advisor.

36. At the time of the Sterne account opening, Mr. Hatzioannides' highest level of education was a GED and his only familiarity with investments was his money market account.

37. Mr. Hatzioannides is an unsophisticated investor who sought to put the money his father gave him in a safe place where he could earn a bit more money by investing.

38. Mr. Hatzioannides told Defendant Mustaphalli that he did not have a lot of money, that he was not working a stable job, that the funds in his money market account came from his father before he passed away, and that he had no other investment or retirement savings.

39. Defendant Mustaphalli arranged for a Sterne account opening application to be filled out, and then had Mr. Hatzioannides sign the Sterne account opening application.

40. The Sterne account opening application listed Mr. Hatzioannides' investment objective as "capital appreciation/growth," and his risk tolerance as "moderate."

41. The Sterne account opening application also listed Mr. Hatzioannides' net worth as $100,000.00 to $199,000.00.

6

42. In 2010 when the Sterne account was opened, other than the funds in his Citibank money market account, Mr. Hatzioannides had assets worth no more than $15,000.00.

43. The Sterne account had an opening balance of approximately $140,000.00.

44. On or about February 2010, Defendant Mustaphalli told Mr. Hatzioannides that he had more forms for Mr. Hatzioannides to sign.

45. On or about February 2010, opened an account for Mr. Hatzioannides opened with Trade-PMR, Inc. ("Trade-PMR account"), with Defendant Mustaphalli as the financial advisor.

46. At time of the opening of the Trade-PMR account, Mr. Hatzioannides's net worth had not changed, a fact which Mr. Hatzioannides, who now viewed Mr. Mustaphalli as a friend, readily shared with Mr. Mustaphalli.

47. Upon information and belief, the Sterne account was closed on or about March 31, 2010, and the Trade-PMR account was active beginning March 31, 2010.

48. Defendant Mustaphalli filled out the Trade-PMR account opening application and just provided an "x" showing Mr. Hatzioannides where to sign.

49. Defendant Mustaphalli indicated that the form was just something Mr. Hatzioannides needed to sign, directed him just to the signature page, and had him sign the document.

50. The Trade-PMR account opening application listed Mr. Hatzioannides' net worth as "$200,000-$499,999."

51. In 2010, when the Sterne and Trade-PMR accounts were opened, Mr. Hatzioannides had assets worth no more than $150,000.00, including the funds that were transferred to the Trade-PMR account.

7

52. The Trade-PMR account opening application filled out by Defendant Mustaphalli, listed Mr. Hatzioannides' investment objective as "capital appreciation/growth," and his risk tolerance as "moderate."

53. At the time that Defendant Mustaphalli filled out the Trade-PMR account opening application, Mr. Hatzioannides was working odd jobs and earning minimum wage.

54. Upon information and belief, in or around September 2011, Mr. Mustaphalli's employment at Sterne Agee ended, and Mr. Mustaphalli continued to manage the Trade-PMR account.

55. For the period June 1, 2014 to June 20, 2014, the Trade-PMR Account had a closing balance of $104,447.54; 11.76% consisted of cash and sweep balances, and 88.24% consisted of stocks, options, and exchange traded funds ("ETFs").

56. In early June 2014, Defendant Mustaphalli represented to Mr. Hatzioannides that he would be going to a new financial advisory firm, where he would really be able to take care of Mr. Hatzioannides and that he would manage Mr. Hatzioannides' money there.

57. Defendant Mustaphalli had Mr. Hatzioannides sign some more documents to transfer the account.

58. On or about June 23, 2014, Mr. Hatzioannides received a check of $100,000.00 from his Trade-PMR Account.

59. On or about June 23, 2014, Defendant Mustaphalli personally filled out the application to open an account at Interactive Brokers for an investment in MCP, with MAG and/or MCM as the investment advisor and showed him where to sign.

60. Defendant Mustaphalli did not advise that Mr. Hatzioannides read the application before signing it, nor did he explain the terms of the application, just that it was some "basic forms."

8

61. The Interactive Brokers account application listed MAG as the investment advisor for Mr. Hatzioannides' account.

62. The Interactive Brokers account application filled out by Mr. Mustaphalli listed Mr. Hatzioannides as female.

63. Mr. Hatzioannides' birth certificate lists Mr. Hatzioannides as male.

64. To date, Mr. Hatzioannides has always identified as male.

65. The Interactive Brokers account application listed Mr. Hatzioannides as having extensive knowledge in stocks, bonds, and options.

66. When Defendant Mustaphalli filled out the account application in 2014, Mr. Hatzioannides had almost no knowledge of stocks, bonds, and options or about investment accounts in general.

67. Defendant Mustaphalli knew of Mr. Hatzioannides limited formal education and investment background and experience, having knowledge of Mr. Hatzioannides investment history.

68. The Interactive Brokerage account application further stated that Mr. Hatzioannides had an estimated net worth between $250,000.00 and $500,000.00, and an annual net income between $50,000.00 and $100,000.00.

69. In 2014, when the Interactive Brokers account was opened, Mr. Hatzioannides had assets worth less than $115,000.

70. In 2014, Mr. Hatzioannides continued to work odd jobs, earning minimum wage.

71. In 2014, when Defendant Mustaphalli arranged for the opening of the Interactive Brokers account for Mr. Hatzioannides with MAG as the financial advisor and the investment in MCP, Mr. Hatzioannides was having vision difficulties.  For a period of several years

9

culminating in surgeries over the next two years, Plaintiff suffered macular degeneration, a detached retina and other eye problems.

72. In 2014, when Defendant Mustaphalli arranged for the opening of Mr. Hatzioannides account for investment in MCP, Defendant Mustaphalli was under investigation by FINRA.

73. Defendant Mustaphalli never disclosed to Plaintiff that he was under investigation by FINRA and that he might be suspended as a broker.

74. In July 2014, FINRA suspended Defendant Mr. Mustaphalli for two years, issued a fine against him and disgorged his profits for forming and managing a hedge fund without prior written notice from his member firm.

75. To date, Mr. Hatzioannides, an unsophisticated investor, has never received any disclosure documents on the investment in MCP.

76. To date, Mr. Hatzioannides has never received any disclosure regarding Defendant Mustaphalli's disciplinary history in the financial industry nor has he received any disclosure regarding the poor performance of MCP prior to his investment in the investment account.

77. In or around 2015, Mr. Hatzioannides had eye surgery because he had a detached retina.

78. Mr. Hatzioannides informed Mr. Mustaphalli that he could not see very well.

79. In or around April 2015, Mr. Mustaphalli arranged for Mr. Hatzioannides to invest in MCP the rest of his $100,000 in investment money left, and arranged for deposit into the Interactive Broker's account for the investment in MCP (hereafter "investment account").

80. On or about the middle of July 2015, Mr. Hatzioannides received his first statement for the investment account, a one page document. He called Defendant Mustaphalli to try to understand whether he had suffered any losses.

81. In or around the middle of July 2015, Defendant Mustaphalli "explained" to Plaintiff that he had lost absolutely nothing, that the investment account statement didn't mean anything, and that Mr. Hatzioannide's money was safe.

82. During the same conversation in or around the middle of July 2015 referenced in paragraph 81 to this Complaint, Defendant Mustaphalli informed Mr. Hatzioannides that he had $100,000 in his investment account.

83. Mr. Hatzioannide's investment account statement listed MCM as the Investment Advisor for the MCP and MG as the General Partner and Mr. Hatzioannides didn't understand what it was saying.

84. Mr. Hatzioannides had no knowledge that he had a limited partnership in MCP and no understanding that he was invested in a hedge fund.

85. The investment account statement on the MCP investment listed no individual trades nor provided any information as to what the account was invested in.

86. Over the next several months following July 2015, Defendant Mustaphalli repeatedly reassured Mr. Hatzioannides that the investment account statements did not reflect all of the money that was actually in his account and convinced Mr. Hatzioannides 1) that the statements did not correctly reflect the account value and 2) that Mr. Hatzioannides had not suffered any losses.

87. From July 2015 through in or about August 2016, Mr. Hatzioannides spoke with Defendant Mustaphalli on the phone and met him in his office to speak with Defendant Mustaphalli about the status of his investment and to withdraw some funds to pay for basic living

expenses.  Mr. Hatzioannides even brought Defendant Mustaphalli sandwiches periodically as he was glad to feel assured that someone was watching out for his financial future.

88. As a result of the assurances and "explanations" about the investment account that Defendant Mustaphalli, Mr. Hatzioannides believed Defendant Mustaphalli's statements that Mr. Hatzioannides investment in MCP was performing well and Mr. Hatzioannides continued to make periodic withdrawals from his Interactive Brokers account to cover expenses (totaling approximately $2,000-$4,000.00), as he had done before with his Sterne and Trade PMR accounts.

89. Some time after April 2016, Mr. Hatzioannides received a tax document reflecting significant losses on the MCP investment for 2015.

90. Mr. Hatzioannides called Defendant Mustaphalli immediately after he received the tax document to ask him about it.

91. In or about August 2016, Mr. Mustaphalli admitted for the first time to Mr. Hatzioannides that there were significant losses in Mr. Hatzioannides's investment account.

92. Mr. Hatzioannides filed Form 1040X to amend his 2015 tax return to reflect the short-term capital loss of $62,741.

93. Mr. Hatzioannides' 2015 New York Partner's Schedule K-1 on the MCP investment shows the capital contributed during the year in cash in the amount of $100,000.00, a current year (2015) decrease as $76,728.00, and ending capital account in the amount of $23,272.00.

94. Mr. Hatzioannides' 2015 Federal Income Tax Return, Schedule K-1 shows the capital contributed during the year in the amount of $100,000.00, current year decrease as $76,728.00, and his ending capital account as $23,272.00.

12

95. Once Defendant Mustaphalli admitted that the loss was real, Mr. Hatzioannides immediately closed out his investment in MCP.

96. At the time Mr. Hatzioannides learned of the loss in 2016, the account value had dropped even more.

97. In 2016, when Mr. Hatzioannides closed out his account, he received a check from MCP in the amount of $7,540.00.

### Count One

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

98.   Mr. Hatzioannides repeats and realleges Paragraphs 1 – 97 of this Complaint as if fully restated and set forth herein.

99.   The investments made by Defendant Mustaphalli on behalf of Mr. Hatzioannides constitute investment in securities in accordance with the definitions set forth in § 2(a)(1) of the Securities Act [15 U.S.C. § 77(b)(a)(1)] and § 3(a)(10) of the Exchange Act of 1934 [15 U.S.C § 78c(a)(10)].

100.   Defendant Mustaphalli violated of Rule 10b-5, directly or indirectly, by the use of the means or instrumentalities of interstate commerce.

101.   Defendant Mustaphalli employed devices, schemes, or artifices to defraud Mr. Hatzioannides.

102.   Defendant Mustaphalli made untrue statements of material fact to Mr. Hatzioannides in soliciting Mr. Hatzioannide's to open the investment account and to induce him to continue to invest with him/and or any and/or all of the Mustaphalli Entities and made untrue

13

statement of material fact to induce Mr. Hatzioannides to continue investing with him/and or any and/or all of the Mustaphalli Entities.

103.    Defendant Mustaphalli omitted material facts in soliciting Mr. Hatzioannides to open the investment account and to continue to invest with him and/or any of the Mustaphalli Entities.

104.    Defendant Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit in connection with the purchase or sale of securities.

105.    Defendant Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit when he induced Mr. Hatzioannides to leave Trade-PMR and invest his money in MCP investment account.

106.    Defendant Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit when he had the unregistered MCM advisory firm replace the MAG as the Investment Manager for Mustaphalli Capital Partners Fund.

107.    By replacing MAG with MCM, Defendant Mustaphalli attempted to conceal the hedge fund's activities by using an unregistered entity as an advisor so as to avoid disclosure requirements.

108.    Defendant Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit when he omitted to disclose crucial information before Mr. Hatzioannides invested in MCP.

109.    Defendant Mustaphalli failed to disclose to Mr. Hatzioannides that he would be investing his money in MCP, a hedge fund.

110.    Mr. Hatzioannides did not know he received a limited partnership interest in the hedge fund in exchange for his investment.

111.    Defendant Mustaphalli did not provide Mr. Hatzioannides a copy of the Private Placement Memorandum to read at the time he invested in MCP, nor did Defendant Mustaphalli provide any other disclosure document to Mr. Hatzioannides.

112.     Defendant Mustaphalli did not explain that he was investing Mr. Hatzioannides' assets in a highly risky investment or discuss any increased level of risk. Mr. Hatzioannides did not receive any disclosures as to the risk of the investment in MCP as an unsophisticated and unaccredited investor.

113.    Defendant Mustaphalli failed to inform Mr. Hatzioannides that he had limited experience in running a hedge fund or in doing the types of trading that a hedge fund such as MCP may engage in.

114.    Defendant Mustaphalli failed to inform Mr. Hatzioannides that he had a record of losing almost all the money invested in MCP prior to Mr. Hatzioannides's investment.

115.    Defendant Mr. Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit when he filled out the Interactive Brokers opening account information on behalf of Mr. Hatzioannides with inaccurate and incomplete information. Mr. Mustaphalli inaccurately stated that Mr. Hatzioannides was female, had extensive knowledge of stocks, bonds, and options, and had hundreds of thousands of dollars in assets.

116.    Defendant Mustaphalli engaged in acts, transactions, and practices in the course of business which operated or would have operated as a fraud or deceit when he misrepresented

to Mr. Hatzioannides that his account was performing well, that Mr. Hatzioannides had suffered no losses, and that the amount indicated on the investment account statements did not correspond with the actual amount of money he had in the Interactive Brokers account.

### Count Two

### Section 12(a)(1) of the Securities Act

117.    Mr. Hatzioannides repeats and realleges Paragraphs 1 – 97 of this Complaint as if fully restated and set forth herein.

118.    The limited partnership interests in Mustaphalli Capital Partners Fund offered and sold to Mr. Hatzioannides are "securities" under the Securities Act of 1933 (the "Securities Act").

119.    These securities were offered for sale and sold by Defendant Mustaphalli and the Mustaphalli Entities to Mr. Hatzioannides in exchange for $100,000 from Mr. Hatzioannides.

120.    Defendants Mustaphalli solicited the sale of the limited partnership interests in MCP for the financial gain and benefit of Defendant Mustaphalli and the Mustaphalli Entities using the facilities of interstate commerce, including the telephone and mails.

121.    Defendant Mustaphalli solicited and received investments in MCP from more than 35 investors.

122.    These investors, including Mr. Hatzioannides, were largely unsophisticated and unaccredited investors.

123.    In a sworn affidavit by New York State Assistant Attorney General Kenneth J. Haim in the matter of *People of the State of New York v. Dean Mustaphalli et al.*, No. 451805/2016, Mr. Haim attested that Mustaphalli Capital Partners Fund sold limited partnership interests in excess of $5,000,000.

124.    Neither Defendant Mustaphalli nor any of the Mustaphalli entities provided Mr. Hatzioannides with any of the required disclosures prior to investing in MCP.

125.    Upon information and belief, neither Defendant Mustaphalli nor any of the Mustaphalli entities provided the required disclosures to a number of other unsophisticated and unaccredited investors in MCP.

126.    Mr. Hatzioannides did not have a purchaser representative on his investment in the investment account.

127.    The limited partnership interests in MCP do not constitute a class of securities exempt from registration pursuant to any of the provisions of the Securities Act, nor were these securities offered and sold in a transaction exempt under the provisions of the Securities Act.

128.    In connection with such transactions, Defendant Mustaphalli and his wholly owned entities failed to deliver a prospectus consistent with the requirements of Section 5 of the Securities Act.

129.    The Defendant Mustaphalli and the Mustaphalli Entities utilized the means of interstate commerce and the mails to offer, sell, and deliver the securities without any registration statement being in effect and without the use of a prospectus meeting the requirements of the securities laws. Defendants thereby violated Section 12(a)(1) of the Securities Act.

## Count Three

### Breach of Fiduciary Duty

130.    Mr. Hatzioannides repeats and realleges Paragraphs 1 – 97 of this Complaint as if fully restated and set forth herein.

131.   As the investment advisor for Mr. Hatzioannides, Defendant Mustaphalli either through or together with any and/or all of the Mustaphalli Entities had complete control over Mr. Hatzioannides' Interactive Brokers account.

132.   Defendant Mustaphalli unilaterally filled out the Interactive Brokers account application on behalf of Mr. Hatzioannides.

133.   Upon information and belief, Defendant Mustaphalli made all investment decisions related to MCP.

134.   Defendant Mustaphalli engaged in a risky investment strategy knowing that his client Mr. Hatzioannides was uneducated, financially unsophisticated, had limited income and no other savings.

135.   Defendant Mustaphalli failed to disclose to Mr. Hatzioannides the risky nature of the investment strategy in the investment account.

136.   Defendant Mustaphalli failed to disclose to Mr. Hatzioannides that he received limited partnership interests in exchange for his investment in MCP.

137.   Defendant Mustaphalli did not provide Mr. Hatzioannides with the required disclosures to an unsophisticated and unaccredited investor on the investment account.

138.   Defendant Mustaphalli failed to disclose to Mr. Hatzioannides that he had been suspended by FINRA for forming and managing a hedge fund without prior written notice from his member firm.

139.   Defendant Mustaphalli failed to disclose that MCM was not a registered investment advisor in the State of New York.

18

140.  Defendant Mustaphalli failed to disclose that he had very limited experience in running a hedge fund and that he had previously suffered significant losses in the fund in which he was investing Mr. Hatzioannides money in the investment account.

141.  As a result of Defendant Mustaphalli's breach of fiduciary duty, Mr. Hatzioannides lost most of the money he invested in MCP, which amounted to approximately $98,000.

### Count Four

### Breach of Contract

142.  Mr. Hatzioannides repeats and realleges Paragraphs 1 –97 of this Complaint as if fully restated and set forth herein.

143.  Mr. Hatzioannides entered into a contract with Defendant Mustaphalli and/or any and/or all of the Mustaphalli Entities when he opened up the investment account and provided money for such investment.

144.  In engaging in the above alleged acts and transactions stated in Paragraphs 1-94, Defendant Mustaphalli and/or any and/or all of the Mustaphalli Entities violated the covenant of good faith and fair dealing in entering into the contract for the investment account.

## Relief Sought

WHEREFORE, Mr. Hatzioannides respectfully requests that this Court enter a Final Judgment in

the amount of $98,000 plus interest and costs allowed by law, the legal fees associated with this

action, and such other and further relief as the Court may deem just and proper.


Date: July 3, 2017

New York, New York


Elizabeth Goldman, Esq. EG 9920
Director, Securities Arbitration Clinic
Cardozo School of Law
55 Fifth Avenue, Rm. 1119
New York, New York 10003
T (212) 790-0275
F (212) 790-0256


Rushelle Bailey
Student Intern

Kaela Dahan
Student Intern